Good morning, Your Honors. My name is Jamie Ibrahim, and I represent Petitioner Rafael Maldonado-Galindo. Mr. Maldonado is a lawful permanent resident who has resided in the United States since the age of one. In September of 1996, he applied for and was granted relief from deportation under former Section 246 of the Immigration and Nationality Act. Eight years later, in January of 2004, Mr. Maldonado was convicted of a controlled substance violation and was subsequently placed into removal proceedings. He is currently in a detention facility in Arizona, awaiting removal to Mexico. At his removal hearing, the immigration judge determined that Mr. Maldonado is not eligible for statutory relief of cancellation of removal, a decision that the Board of Immigration Appeals later affirmed. We are here today appealing that decision of the immigration judge that Mr. Maldonado is not eligible for cancellation of removal. Specifically, we believe that the immigration judge erred in finding that Section 240A.C.6 of the Immigration and Nationality Act is not impermissibly retroactive as applied to Mr. Maldonado. Now, Section 240A.C.6 of the INA provides that cancellation of removal is not available to an alien who has been granted relief under former Section 212C. Why is it that you say it's retroactive? I'm not sure I follow that. Well, the line graph of the court held that a statute is retroactive if it attaches a new legal consequence to pre-enactment conduct. Now, here the pre-enactment conduct was Mr. Maldonado's request and acceptance of relief under former Section 212C. Now, the passage of the Illegal Immigration Reform and Immigrant Responsibility Act in 1996 transformed, if that is applied to Mr. Maldonado, it would transform that former receipt of relief under 212C into a permanent bar against his ability to apply for any future relief. Ms. Ebrahim, one of the reasons that we discourage retroactive laws, laws that change things, is because we rely on the law as it exists at any given moment and don't want things changed, because we would alter our behavior if we knew that the law was going to be different. What behavior of Mr. Maldonado's was altered by this change in the law in 1996? He wouldn't have accepted the Attorney General's grace in 1991? Well, it's in 1996, yes, Your Honor. It's possible that he may not have, had he known that that would be a permanent bar. Well, then he would have been sent out of the United States far earlier than he was. And former counsel for Mr. Maldonado has argued that he might have applied for a different form of relief, such as a change in status or the- Well, he had a conviction. He was going to be shipped out of the United States. He applied to the Attorney General, who granted him a waiver of inadmissibility. That was a graceful act by the Attorney General, one that he was not obligated to do. And your client would have turned that down because of the possibility that after he committed additional crimes, he might have sought a different kind of relief? Well, and I agree it sounds a little bit, as the government has argued, it may sound absurd. But one of the points that I think is important to make is you don't have to establish reasonable reliance in order for a statute to be impermissibly retroactive. The Court has held, the Supreme Court has held, that there are three considerations that this Court may consider, fair notice or reasonable reliance or settled expectations. Now, here I think the strongest argument is that Mr. Maldonado had no fair notice that his acceptance of relief under Section 212C would later be transformed into this complete bar against his ability to apply for relief. The law says if you've previously applied for relief and we granted you relief, you don't get a second bite at the apple. Correct. And for those people who get that first bite at the apple, after the enactment of that statute, they have fair notice that that is their one bite at the apple. Now, Mr. Maldonado didn't have notice that in 1996, in January of 1996, that he was getting his one bite at the apple. He may have altered his choices at that time, or he may not have. What other choices would he have had? Well, again, former counsel has argued that he had other avenues of relief that he could have. What other avenues? A motion to change things, a motion for a change in status. Could he get a change in status if he had this? Would he be eligible if he had the conviction? You know, I'm not sure on that point, Your Honor. Former counsel has argued that he would be. I mean, the United States was seeking to deport him then because of his criminal activities. Again, you get the waiver of inadmissibility from the Attorney General at that point. He's not in a very good negotiating position, is he? No, and, you know, it's interesting you bring that up because the government has said that Mr. Maldonado, this isn't impermissibly retroactive as applied to him, because he can't demonstrate the type of quid pro quo that was present in INS v. St. Cyr. Now, two members of this Court, as well as the Second, Third, and Fourth Circuits, have held that you don't need to have that type of quid pro quo reliance in order to have a statute be impermissibly retroactive. They also have held you don't need to have actual subjective reliance. We don't need to show that he actually considered this statute when he made his decision. It's just whether it was reasonable for him to rely on the current status of law at the time that he accepted relief under Section 2. And what would he have been relying on? The possibility that if he accepted the waiver of inadmissibility, that that would not be a bar to some future discretionary action by the Attorney General after he committed additional crimes? He was relying on that to say, well, gee, if I had known that, then I wouldn't have committed these additional crimes? Well, again, it doesn't have to be that he actually subjectively considered that. It's whether that would be reasonable reliance for a person to rely on the current state of the law and to conform their conduct to that decision. Could Congress have just completely eliminated, did they eliminate 212C relief and they instituted this 240A? Couldn't they have just done away with all that? Then what would that have done? Would that have been a retroactive problem? Congress may legislate retroactively, but it has to do so explicitly. Now, with respect to this statute, Congress could have said that cancellation of removal is not available to an alien who's been granted 212C relief before, on, or after the date of enactment of the Act. It didn't say that. Congress could have said that cancellation of removal is not available to an alien who's been granted relief under former Section 212C, regardless of when that relief was granted. It didn't say that either. Now, we're just contending that Congress must be explicit if it wants a statute to be applied retroactively, and it hasn't done so here. So you're saying they could do it as long as it's … They definitely could do it, but they haven't done it yet. What case authority are you relying upon to support your argument that the, if there is no notice, it's impermissibly retroactive? What's your best case authority? Landgraf. Oh. Landgraf actually held that. In that case … I thought you said something about two members of this Court had held the same thing. Two members in their concurrence in Garcia-Ramirez v. Gonzalez held that, yeah, you don't need the type of quid pro quo that's present in St. Cyr. In Landgraf, the Court actually didn't even consider whether there was reasonable reliance or not in finding that the amendments to the Civil Rights Act were impermissibly retroactive as applied to a defendant who had sexually harassed a fellow employee. The Court felt that there was, because there was no fair notice that at the time that the employee sexually harassed his co-employee, he didn't have fair notice that that conduct would subject him to this new amendment in the future, which added the availability of both compensatory and punitive damages. The act already occurred before the amendment. Before the amendment. That's different, though. Well, in that case, Mr. Maldonado's conduct, his pre-enactment conduct, was the acceptance of relief under 212C, and that occurred eight months prior to the enactment of the cancellation of removal statute. Counsel, if you wish to reserve the remainder of your time. Okay. Let's hear from the government. Ms. Schwartz. Good morning, Your Honors. Nora Ascoli-Schwartz for Respondent Alberto Gonzalez. I'd like to compliment counsel for taking this case on pro bono. I think she's done a magnificent job. But the problem is her client is not here facing removal because he was granted 212C in 1996. He's facing removal because subsequent to that granted 212C, the law changed, and he continued to commit crimes. There was no settled expectation, reasonable reliance. It was either 212C or go. So he had a choice. And he was given that grant, and there was no reliance, reasonable or otherwise. Would it have made a difference, counsel, if there had been some other avenue of relief in 1996? It's hard. There wasn't. I mean, for criminal acts, the only waiver was 212C. He couldn't adjust his status because he needed that waiver to go back to the status he had if there were alternative forms of relief, perhaps, but there weren't. I mean, 212C was the sole avenue of relief from deportation for criminal aliens. And actually, no, Your Honor, it wouldn't make a difference because the fundamental difference in our approach is here is the conduct which is under consideration by the court. The conduct under consideration is not the 212C grant. It is the criminal activity in 2004, the felony jury conviction. It occurred after the legislation. It occurs after the legislation. So you cannot argue that there was no notice because citizens, residents, everyone is expected to know the status of the law. He had been in removal proceedings before. He knew there was a risk if he engaged in illegal conduct. Plus the fact, even if there were alternate forms of relief to 212C, he had no reason to expect that he could continue to commit crimes and continue to have them forgiven. He was on notice even in 1996 that it was highly unlikely. In my experience, I've never seen a second grant of 212C. It wasn't specifically barred. Eight months later, it was specifically barred. So, Counsel, your argument is that citizens in general have imputed notice that you can't commit crimes with impunity. Pretty much. Is that what your argument is? Well, that's one of the arguments. It's not the primary argument. On the notice issue. Because she's saying that there had to be notice that the law was going to be changed. Well, no, there doesn't have to be notice that the law has to be changed. I mean, Congress can change the law. The question is on the retroactivity if it affects settled expectations. He had no settled expectations. But that wasn't her argument. Her argument was that under Landgraf, that if there was no notice to him that the law would be changed in such a way to affect him. The law changes. No one has a right to expect that the law will stay the same forever. And he had no right to expect, even under the law as it was, that he would get a second waiver. Because the law changed eight months later to say you absolutely cannot, even in the First of all, he's on notice that it's not supposed to violate the law. Second of all, he's on notice, and that's Federal Crop Insurance, I think, that says people are expected to know what the law is and to know when they're violating. He certainly knew that he faced removal if he violated the law. And after the law changed in 1996, eight years later, he's still committing crimes. He cannot reasonably have expected in 2004, when he committed his drug offense, his controlled substance offense, to which he went to a jury, that he would get — he had that second waiver available to him. And there is no basis in law, XE, or under the — any analysis, retroactivity analysis, that would find otherwise. He had no reasonable expectation. There is no protected liberty interest in discretionary relief. And it had been eliminated eight years before he committed the removable offense. Again, he's not here because he took 212C in 1996. He is here because he committed criminal offenses from 1999 to 2004, knowing that they were removable offenses, and when the law said you cannot get another waiver for them. There was — we have all the elements here. There was fair notice. There were no settled expectations. There was no reasonable reliance. When he accepted — and again, the issue is, is the triggering conduct, the crimes, or the acceptance of 212C? And it's obviously the crimes. And again, there was no alternative. He either went home in 1996 or he goes home in 2006. He has had 10 more years in this country than he would have had had he not had the active grace from the Attorney General. And it is a sad case, but these actions are all because this alien has continued to violate the laws after having been received a discretionary grant of relief. From — within the grace of the Attorney General, he is not entitled to a second one. Is there — are there any further questions? I don't think so. Thank you, Counsel. Ms. Ibrahim, I believe you have about a minute and a half left. I have three points that the government raised that I'd like to quickly and briefly address. The first is that the government argues that Mr. Maldonado had notice as of September of 1996 that he would be ineligible for cancellation of removal. In effect, the government contends that the very enactment of Section 240AC6 put Mr. Maldonado on notice that he would be ineligible for future relief from removal. But this is — Their argument was that because he had been subjected to removal before for committing a crime, he knew the consequences of committing a crime, not the fact that the statute was enacted, but the fact that he knew as a practical matter that commission of a crime would subject him to removal. But he would — that's correct. But prior to September of 1996, Section 212C relief was actually freely granted. People were eligible for multiple grants of relief under Section 212C. And, in fact, I saw a statistic that said something like 60 percent of requests for Section 212C relief were granted. Subsequent? No, this is prior to September of — No, no, no, I mean subsequent grants, more than one to a single individual. Yes. That was — What's that source? I'm sorry. I don't have that source in front of me, Your Honor. I believe — Your contention is that the attorney general does give two bites at the apple, that people come back a second criminal conviction, and the attorney general decides to let them back in the United States a second time? Prior to September of 1996, yes. An alien could, again, apply for a second grant of relief. Well, I understand that the law after 1996 says he can't even apply, but the application and the granting of that application are two very different things. Correct. But prior to September of 1996, an alien could apply for that second grant of 212C relief. Right, but your representation was you saw a statistic that showed that there were subsequent grants of 212C to the same individual. No, I'm sorry. That wasn't the statistic I was granting. I was offering. The statistic that I was offering was just showing the freeness with which Section 212C relief was granted. The first time. The issue is whether or not that same freedom would be applicable to the second request. He would have been eligible for a second grant of Section 212C relief, yes. In the attorney general's discretion? Yes. Why would the attorney general grant a second bite at the apple? For any — I mean, it would just be at least Mr. Maldonado. He would have — Mr. Maldonado would have no assurances whatsoever that he could do that. So his only reliance here, the only thing of fair notice is that he thought that he would have — that if he committed a second crime, that he would have the opportunity of applying for 212 relief, and that his right to apply has now been taken away. Correct, Your Honor. Okay. Now, the second argument the government made was that — Counsel, your time has expired. Is there anything we really need to — is there something we really need to know? I disagree with government's contention that the conviction was a triggering event. I think the triggering event was actually the pre-enactment conduct of his acceptance of relief under Section 212C. Thank you, Your Honor. Okay. Thank you, Ms. Ibrahim. Thank you for taking the case, Pro Bono, too. We do recognize your contributions to the court. Maldonado Galindo will be — it will be submitted, and we will close the hearing.
judges: Siler , Rawlinson, Bybee